STATE OF MICHIGAN
WASHTENAW COUNTY TRIAL COURT

JAMES HENDRICKS, et al.,
    Plaintiffs,

Case No. 10-849-CH
Hon. Archie C. Brown

v.

US BANK NATIONAL ASSOCIATION
AS SUCCESSOR TRUSTEE TO BANK
OF AMERICA, et al.,
    Defendants.
_____/

James Fraser (P57297)
Attorney for Plaintiffs

W. Jeffrey Barnes
Co-Counsel for Plaintiffs, Pro Hac Vice

William G. Asimakis, Jr. (P46155)
Matthew R. Rechtien (P71271)
Attorneys for Defendants
_____/

## OPINION AND ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY DISPOSITION AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY DISPOSITION

Held in Ann Arbor, Michigan on
June 6, 2011

    After review of the pleadings and argument in Court by counsel for the parties, and review of supplemental pleadings filed by the Plaintiff, the Court grants the Plaintiffs' Motion and denies the Defendants' Motion for the reasons set forth below.

    Plaintiffs executed an Adjustable Rate Note and Mortgage on October 30, 2006 in favor of Defendant First Franklin, as Lender, and to Mortgage Electronic Recording Systems, Inc. ("MERS"), as Mortgagee, as to their real property commonly known as 5888 Par View Drive, Ypsilanti Township, Michigan.

    On or about December 15, 2009, Plaintiffs received a letter from counsel representing Home Loan Services, Inc ("HLS"), claiming to be the servicer of the loan, and that the mortgage loan was in default as of September 1, 2009.

1

On or about December 22, 2009, in response to a letter sent by Plaintiffs, First Franklin sent a letter to Plaintiffs saying that Plaintiffs inquiry had been received and they would receive an answer shortly.

On or about December 30, 2009 Plaintiffs received a letter from counsel representing First Franklin Loan Services of Pittsburgh, Pennsylvania, claiming to be the servicer of the loan, information inconsistent with the earlier December 15, 2009 letter from HLS.

First Franklin Loan Services claimed that it assigned, through an assignment document, the mortgage loan to Defendant, U.S. Bank, N.A ("USB"). The assignment document stated that MERS assigned the Mortgage and Promissory Note to USB on October 30, 2006, however, it was recorded with the Register of Deeds on December 30, 2009.

Subsequently on January 21, 2010, counsel for HLS wrote another letter to Plaintiffs again claiming to be the servicer of the loan.

USB proceeded to foreclose on the Plaintiffs' property, and USB purchased the property at the Sheriff's sale on February 1, 2010.

The Court in *Residential Funding Co., LLC. V Gerald Saurman, -- N.W. 2d, 2011 WL 1516819, Mich.App., April 21, 2011 (NO. 290248, 291443)*("RFC") was decided by a 2–1 majority and is binding precedent on this Court at this point in time.

## MERS

The RFC Court explained that MERS was developed as a mechanism to provide for the faster and lower cost buying and selling of mortgage debt. By operating through MERS, these financial entities could buy and sell loans without having to record a mortgage transfer for each transaction because the named mortgagee would never change; it would always be MERS even though the loans were changing hands. MERS would purportedly track the mortgage sales internally so as to know for which entity it was holding the mortgage at any given time and, if foreclosure was necessary, after foreclosing on the property, would quit claim the property to whatever lender owned the loan at the time of foreclosure.

As described by the Court of Appeals of New York, in *MERSCORP, Inc v. Romaine*, 8 NY3d 90, 96; 861 N.E.2d 81(2006):

In 1993, the MERS system was created by several large participants in the real estate mortgage industry to track ownership interests in residential mortgages. Mortgage lenders and other entities, known as MERS members, subscribe to the MERS system and pay annual fees for the electronic processing and tracking of ownership and transfers of mortgages. Members contractually agree to appoint MERS to act as their common agent on all mortgages they register in the MERS system.

The initial MERS mortgage is recorded in the County Clerk's office with "Mortgage Electronic Registration Systems, Inc." named as the lender's nominee or mortgagee of record on

2

the instrument. During the lifetime of the mortgage, the beneficial ownership interest or servicing rights may be transferred among MERS members (MERS assignments), but these assignments are not publicly recorded; instead they are tracked electronically in MERS's private system. In the MERS system, the mortgagor is notified of transfers of servicing rights pursuant to the Truth in Lending Act, but not necessarily of assignments of the beneficial interest in the mortgage. [Footnotes omitted.]

The sole issue in RFC was whether MERS, as mortgagee, but not noteholder, could exercise its contractual right to foreclose by means of advertisement.

Foreclosure by advertisement is governed by MCL 600.3204(1)(d), which provides, in pertinent part:

[A] party may foreclose a mortgage by advertisement if all of the following circumstances exist:

\* \* \*

(d) The party foreclosing the mortgage is either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage.

The parties in RFC agreed that MERS was neither the owner of the indebtedness, nor the servicing agent of the mortgage. Therefore, MERS lacked the authority to foreclose by advertisement on defendants' properties unless it was "the owner ... of an interest in the indebtedness secured by the mortgage."

The question, then, was what being the "owner ... of an interest in the indebtedness secured by the mortgage" requires.

In RFC the defendants' indebtedness was solely based upon the notes because defendants owed monies pursuant to the terms of the notes. Consequently, in order for a party to own an interest in the indebtedness, it must have a legal share, title, or right in the note.

The court in RFC determined that Plaintiffs' suggestion that an "interest in the mortgage" is sufficient under MCL 600.3204(d)(1) is without merit. This is necessarily so, as the indebtedness, i.e., the note, and the mortgage are two different legal transactions providing two different sets of rights, even though they are typically employed together. A "mortgage" is "[a] conveyance of title to property that is given as security for the payment of a debt or the performance of a duty and that will become void upon payment or performance according to the stipulated terms." The mortgagee has an interest in the *property*. The mortgagor covenants, pursuant to the mortgage, that if the money borrowed under the note is not repaid, the mortgagee will retain an interest in the *property*. Thus, unlike a note, which evidences a debt and represents the obligation to repay, a mortgage represents an interest in real property contingent on the failure of the borrower to repay the lender. The indebtedness, i.e., the note, and the mortgage are two different things.

As the Court determined in RFC, this Court finds that MERS did not have the authority to foreclose by advertisement on Plaintiffs' property. Pursuant to the mortgages, Plaintiffs were the mortgagors and MERS was the mortgagee. However, it was the Defendant lenders that lent Plaintiffs money pursuant to the terms of the notes. MERS, as mortgagee, only held an interest in

3

the *property* as security for the note, not an interest in the note itself. MERS could not attempt to enforce the notes nor could it obtain any payment on the loans on its own behalf or on behalf of the lender. Moreover, the mortgage specifically clarified that, although MERS was the mortgagee, MERS held "only legal title to the interest granted" by defendants in the *mortgage.* Consequently, the interest in the mortgage represented, at most, an interest in Plaintiffs' property. MERS was not referred to in any way in the notes. The record evidence establishes that MERS owned neither the notes, nor an interest, legal share, or right in the notes. The only interest MERS possessed was in the property through the mortgage. Given that the notes and mortgages are separate documents, evidencing separate obligations and interests, MERS' interest in the mortgage did not give it an interest in the debt.

The Court in RFC further held that MERS analysis ignores the fact that the statute does not merely require an "interest" in the debt, but rather that the foreclosing party *own* that interest. As noted above, to own means "to have good legal title; to hold as property; to have a legal or rightful title to." This Court adopts the RFC analysis that none of these terms describes MERS' relationship to the note. Defendants' claim that MERS was a contractual owner of an interest in the notes based on the agreement between MERS and the lenders misstates the interests created by that agreement. Although MERS stood to benefit if the debt was not paid—it stood to become the owner of the property—it received no benefit if the debt was paid. MERS had no right to possess the debt, or the money paid on it. Likewise, it had no right to use or convey the note. Its only "right to possess" was to possess the property if and when foreclosure occurred. Had the lender decided to forgive the debt in the note, MERS would have had no recourse; it could not have sued the lender for some financial loss. Accordingly, it owned no financial interest in the notes. Indeed, it is uncontested that MERS is wholly without legal or rightful title to the debt and that there are no circumstances under which it is entitled to receive any payments on the notes.

Finally, Defendants' cannot grant MERS the authority to take action where the statute prohibits it. Regardless of whether Defendants would like MERS to be able to take such action, it can only grant MERS the authority to take actions that our Legislature has statutorily permitted. Where the Legislature has limited the availability to take action to a specified group of individuals, parties cannot grant an entity that falls outside that group the authority to take such actions. Here, the Legislature specifically requires ownership of an interest in the note before permitting foreclosure by advertisement.

The contention that the contract between MERS and First Franklin provided MERS with an ownership interest in the note, as the court in RFC held, stretches the concept of legal ownership past the breaking point. The Legislature used the word "owner" because it meant to invoke a legal or equitable right of ownership. Viewed in that context, although MERS owns the mortgage, it owns neither the debt nor an interest in any portion of the debt, and is not a secondary beneficiary of the payment of the debt.

Plaintiffs in RFC also argued that MERS had the authority to foreclose by advertisement as the agent or nominee for the Lender, who held the note and an equitable interest in the mortgage. The court in RFC disagreed, holding that it failed under the statute because the statute explicitly requires that, in order to foreclose by advertisement, the foreclosing party must possess an interest in the indebtedness. MCL 600.3204(1)(d). Thus, the Legislature's choice to permit only servicing agents and not all agents to foreclose by advertisement must be given effect.

4

This case, as in RFC, involves a situation where the noteholder and mortgage holder are separate entities, the general proposition set forth in *Davenport v HSBC Bank USA, 275 Mich App 344 (2007)* does not apply. There is nothing in *Davenport* holding that a party that owns only the mortgage and not the note has an ownership interest in the debt.

The court in RFC opined that the separation of the note from the mortgage in order to speed the sale of mortgage debt without having to deal with all the "paper work" of mortgage transfers appears to be the sole reason for MERS' existence. The flip side of separating the note from the mortgage is that it can slow the mechanism of foreclosure by requiring judicial action rather than allowing foreclosure by advertisement. To the degree there were expediencies and potential economic benefits in separating the mortgagee from the noteholder so as to speed the sale of mortgage-based debt, those lenders that participated were entitled to reap those benefits. However, it is no less true that, to the degree that this separation created risks and potential costs, those same lenders must be responsible for absorbing the costs.

## US BANK

Defendants argue that RFC is not on point because First Franklin pooled and transferred its interest in the loan, the Mortgage and Note, into a securitized trust over which USB became the trustee. First Franklin endorsed the Note to the order of First Franklin Financial Corporation, which thereafter endorsed the Note in blank, transferring it to USB and/or USB's agents. Exhibit A to Plaintiff's Brief.

Defendants further argue that MERS, as First Franklin's nominee, drafted a recordable Assignment of Mortgage assigning the Mortgage together with the Note and all other obligations secured by said Mortgage to USB, as trustee, dated December 17, 2009.

Defendants conclude by stating that on December 30, 2009, the Assignment was recorded in the Washtenaw County Register of Deeds, and therefore, as a result of all of these actions, USB was the record owner of both the Mortgage and the Note in advance of any foreclosure.

Plaintiffs, in response, request that this Court declare that USB, successor trustee to the First Franklin Mortgage Loan Trust, Mortgage Loan Asset-Backed Securities, Series 2006-FF18 has no interest in the mortgage loan that is the subject matter of this action and cannot foreclose, judicially or otherwise, that loan.

Plaintiffs' contend that USB never actually received ownership of the Plaintiffs' mortgage loan because the loan was not ever properly transferred to USB according to the terns of the First Franklin Mortgage Loan Trust, Mortgage Loan Asset-Backed Certificates, Series

5

2006-FF18's Pooling and Service Agreement ("PSA"), and the assignments that occurred in this case did not follow the law of trusts in the State of New York to validly transfer the trust to USB.

The Court was provided a copy of the PSA at an earlier hearing for its review. The Court finds, upon reviewing the PSA, that the trust was created on December 1, 2006 and had a closing date of December 28, 2006. PSA pages 36-37. The closing date establishes when the trust assets musts be transferred to the trust.

Merrill Lynch Mortgage Investors, Inc., is the depositor. PSA p. 38. Pursuant to Section 2.01(A), the depositor has to deliver the mortgage loan to the trustee, in this case USB. Plaintiff contends that there should be an endorsement from First Franklin Financial Corp to Merrill Lynch, and an endorsement from Merrily Lynch to the trustee (originally LaSalle Bank National Association) or, at least an endorsement in blank by Merrill Lynch. The Court finds that there is only an endorsement from First Franklin, a division of National City Bank, to First Franklin Financial Corp, then an endorsement by First Franklin Financial Corp in blank. Plaintiffs' Exhibit B. PSA Sec. 201(A) requires that the Mortgage Note shall include all intervening endorsements showing a complete chain of title. Plaintiffs' Exhibit A. Since the Note never passed to Merrill Lynch the trust could not have validly received it.

PSA Sec. 201(E) requires the depositor to deliver originals of any intervening assignments of the Mortgage, with evidence of recording thereon. Plaintiffs' Exhibit A. The record before the Court is that the only assignment of the mortgage that was recorded was the assignment from MERS to USB, as trustee. Plaintiffs' Exhibit C. However, it is clear from the record that the mortgage note was actually transferred from the originator of the loan, First Franklin, a division of National City Bank, to First Franklin Financial Corp.

The Court finds that the transfer of the mortgage note from First Franklin to First Franklin Financial Corp also transferred the underlying mortgage. However, this transfer was never reduced to a mortgage assignment that was recorded with the Washtenaw County Register of Deeds, presumably because MERS purportedly held legal title to the mortgage itself but had nothing to do with this particular transfer. The Court further finds that PSA Sec. 201(E) was not complied with because the transfer from First Franklin to First Franklin Financial Corp. was never recorded.

Defendants' failure to strictly comply with the terms of the PSA means that the loan at issue was never properly transferred to the trust. Any transfer of mortgage loans, such as Plaintiffs, was mandated to comply with New York Trust law and the terms and conditions of the PSA governing conveyance of mortgage loans into the Trust. PSA pp 155 and 36. This the Defendants did not do.

The Court finds that the "Assignment", recorded on December 30, 2009 in the Washtenaw County Register of Deeds, serves to transfer nothing. The alleged conveyance failed to comply with the terms and conditions of the PSA and New York Trust law which governs the PSA. The alleged conveyance stated that MERS assigned the Mortgage and Promissory Note to USB, however, there has been no evidence presented to support the chain of the required assignments and endorsements of the mortgage and note as required by the terms and conditions of the PSA.

Other than First Franklin, a division of National City Bank, none of the Defendants owned the indebtedness, owned an interest in the indebtedness secured by the mortgage, or serviced the mortgage.

Therefore, the purported transfers, endorsements or assignments are void ab initio or never properly transferred into the Trust. The only Defendant with standing to proceed is First Franklin, the originator and original Lender of the Note and Mortgage.

The Court grants summary disposition to Plaintiffs on their request for declaratory and injunctive relief contained in their Complaint finding that Defendants do not have a valid defense to Plaintiffs' claims pursuant to MCR 2.116(C)(9) and there are no genuine issues of material fact pursuant to MCR 2.116(C)(10). The Court declares that the foreclosure sale that occurred on February 11, 2010 concerning Plaintiffs' real property is void ab initio pursuant to MCR 2.116 (C)(8), as Defendant, U.S. Bank, N.A. was not entitled to foreclose on Plaintiffs' property under Michigan's Foreclosure by Advertisement statute, MCL 600.3201, et seq.

The Court grants in part and denies in part summary disposition to Defendants. The court denies Defendants Motion to dismiss Plaintiff's Complaint, finding the Complaint states a claim, and is not barred by the Statute of Frauds. The Court grants Defendants' Motion for a judgment of foreclosure, in favor of First Franklin, on their judicial foreclosure counterclaim finding that there are no genuine issues of material fact and that Defendant, First Franklin, is entitled to judgment as a matter of law. Defendants request for costs and attorney fees are limited solely to those costs and attorney fees associated with the judicial foreclosure counterclaim. Any request for costs and attorney fees association with the foreclosure by advertisement is denied.

**IT IS SO ORDERED.**

Honorable Archie C. Brown,
Trial Court Judge